Good morning, Your Honors. May it please the Court, my name is Mario Costa Jr. and I represent the petitioner in this matter, Mr. Ruben Ceron-Casco. And with the Court's permission, I'd like to request two minutes of my time to be reserved for rebuttal. Your Honor, in this case, our position is that the Board erred as a matter of law when it sustained the charge of immobility because the Board made a material mistake when it came to applying the categorical approach. As the record demonstrates, the Board in this case relied on a separate statute, a gang enhancement statute, when it concluded that the crime was a crime involving moral turpitude. We provided a citation to Hernandez-Cruz, which is a recent decision where the Court discusses what the standard is for reviewing a conviction for a crime involving moral turpitude. And in that case, the Board talked about, the Ninth Circuit talks about the elements of the statute and the Board first has to identify the statute of conviction. Here in this case, the statute of conviction was a crime of assault with a deadly weapon, 245A1. But that statute does not have as an element either a gang enhancement for committing the crime in furtherance or for promoting a gang, a criminal gang, or any other kind of provision there. Why isn't assault with a deadly weapon in and of itself a crime involving moral turpitude? Well, for two reasons. The first reason would be that this Court has already held in Carr v. INS that it is not a crime involving moral turpitude. That was under a different statute, though, wasn't it? I believe it was assault with a firearm, but the mens rea requirement is the same for both statutes. The only difference between the two provisions is that one specifically requires the use of the firearm in committing the assault, whereas the other one allows for commission of the offense either with a deadly weapon or an instrument or in a manner or with force likely to produce great bodily injury. My other question for you is why wasn't it appropriate for the Board to have applied the modified categorical approach in which there was an admission that this Act was committed to further the interests of a criminal gang? Our position would be that the modified categorical approach should have been applied. Obviously, my first position would be that Carr v. INS Well, why do you think that it was not? Because the Board clearly doesn't say that it did. And even assuming that the Board did, then the Court would be obligated to find that it did so erroneously because in the last sentence of the BIA's decision, the BIA clearly says that their review of the statute along with the admission, again the word What was that admission though? Wasn't it an admission that it was gang related? And doesn't that indicate a modified approach rather than a categorical approach? I would respectfully answer no, Your Honor, for the following reason. You have to go back to the phrase convicted of. The statute of deportability in this case, the 237A2A small i statute, says any alien convicted after admission. The statute of conviction in this case was a 245A1 statute. The gang enhancement is a separate statute. Yes, but I know there's a separate statute on it. Right. But in the conviction under 245A, was it? The Court mentioned that it was gang related, and that's the modified approach to see what's in the conviction. And I think you've got a high hurdle on the first issue. You may have a better argument on the second, but I think you've got a high hurdle here to say that this is not a case of moral turpitude. Well, as I mentioned, in this case, the Board is obligated to remain within the confines of the modified categorical approach, meaning that the Court could have only relied I'll ask you, going back to the categorical. Yes. The Supreme Court has told us now in brand X that unless we interpret a statute as being unambiguous, and we've said that what's a crime involving moral turpitude is ambiguous, we have to defer to the BIA's interpretation, even if we've previously construed it. So there are some BIA decisions like Sunuto and others saying that this 245A1 or this assault with a deadly weapon is a crime involving moral turpitude. Are we bound by those decisions? No, you're not for the same reasons that were outlined by this Court in Hernandez-Cruz. There's a two-step process that has to be utilized before you can defer to the Board's decision regarding qualifying as a crime involving moral turpitude. The first step is that you have to show that the Board correctly examined the elements of the statute of conviction. That's where I think that they failed, because as I mentioned, there's BIA cases such as Matter of Short and other Ninth Circuit cases that have held. You cannot group two or three offenses together to create one crime involving moral turpitude. There's no requirement in Sunuto in those cases. It was just assault and battery with a deadly weapon. There was no requirement that it include a gang element. They seem to think that just assault and battery with a deadly weapon was enough to be a crime involving moral turpitude. Correct. And so 245A1 is consistent with that. So aren't we just bound by the BIA's interpretation of its statute? I don't believe so for the following reasons. Sunuto didn't speak to the assault with a deadly weapon statute. Sunuto dealt with a domestic battery statute under 243E of the California Penal Code. I think if you want to look at a recent case, again, a recent case that deals with assault with a deadly weapon, you probably want to do what we kind of presented to the corporate, which is somewhat of a balancing test as the board kind of adopts in Matter of Cejas and Matter of Solon. Those two cases were published on the same day, and the board very clearly states that as the mens rea begins to decrease in the assault statute, there has to be an additional aggregating factor such as the existence of some type of great bodily injury or harm. When you look at the facts of this case, and even going back to Your Honor's point about the modified categorical approach, if the board would have applied it, it would have helped us. The plea agreement in this case clearly says that my client pled guilty to committing assault with a deadly weapon, and it says specifically not with force likely to cause great bodily injury. In his own plea agreement, the criminal court accepted that admission. Excuse me. Accept that the same part in the change of plea or to no low contender says assault with a deadly weapon, a felony. Correct. Quote, a knife, end quote. And although it says not with force likely to produce great bodily injury, it says the above offense was committed for the benefit of OSL, a criminal street gang. So if you want us to accept using the part about not with force likely to produce injury, you also have to, it seems to me, accept the part that says it was committed for the benefit of a criminal street gang. Otherwise, you're asking us to accept line 1 and then stop reading. But, Your Honor, with all due respect, I'm asking the court to accept line 1 because line 1 specifically relates to an element of the statute of conviction in this case, whereas the gang enhancement deals with a separate section, 186.22. It's a gang enhancement statute. But it has to do with his state of mind, regardless of whether there's a gang enhancement. I'm not going to dispute that it may or may not have gone to the men's rail, but, again, it's a general intent crime, which is what cases like People v. Rocha, People v. Aguilar, some of the state cases that we cited to discuss. Because it's a general intent crime and because in this case there is absolutely no injury whatsoever that was caused, it's completely possible that the statute might have fallen under the purview of cases like Matter of Secrets where it doesn't qualify as a crime involving moral turpitude. Counsel, if you want to, I'm a little bothered by, you know, the second part of your claim. There has to be a sentence of at least one year in the penitentiary, and the sentence here was 364 days, and actually it wasn't a sentence at all. And it's argued, of course, that misdemeanors cannot be over six months. The client here had spent 364 days incarcerated, and that's why the court gave him the credit. So do you or do you not qualify for the client's benefit by the nature of the sentence here? I'd like to hear your view on that. If I understand Your Honor's question, our position was just simply that if you look at a published case by the name of Olivera Ferreira, in that case the statute of conviction, which was in 11-377, was worded exactly like the statute in this case. It's a Wobbler statute, and that statute, 11-377, specifically provides that the maximum sentence in county jail could be up to one year. But nonetheless, this court took the position in Olivera Ferreira that because a separate statute, which is Penal Code Section 19, affords that the maximum sentence is in fact six months, that that was the sentence that controlled in that case. How do you distinguish United States v. Robinson, the 1992 case? With all due respect, Your Honor, I think in my case what I was focusing on was more on the Ferreira decision, and I think I might have also cited to a case by the name of Bridgeford, which I think speaks more to that issue about how the conviction automatically is converted into a misdemeanor, if that's what the court's question is about. It's about when the sentence is imposed, and in this case it wasn't as though Mr. Seddon had a suspended sentence of five years but got 364 days instead. The sentence was just 364 days. There was no state prison time hanging over his head. But it isn't what he actually got, right? It's what may be imposed. Correct. So our position would be if you adopt what Olivera Ferreira stands for, which is that even in the face of a state statute that has one year as a limit in the statute, you have to go by Penal Code Section 19, which says that the maximum sentence is six months. But that's only if the offense is declared to be a misdemeanor, right? Right. So it wasn't under this statute, was it? Well, under 17, Penal Code Section 17b3, that provision of the statute indicates that any sentence that's imposed other than state prison for a wobbler offense automatically, by operation of law, converts that conviction into a misdemeanor for all purposes. And that's what Bridgeford speaks on. But only, but then, b3, it says the court declares the offense to be a misdemeanor, which I don't think happened here. It might be b2. It's either b2 or b3. I might have the subsection mistaken. With the Court's permission, I'd like to reserve. You've exceeded your time, but we asked a bunch of questions, so you may have one minute for rebuttal on the time. I appreciate that, Your Honor. Thank you very much. We'll hear from the government. Bless you. Bless you. Sorry. Morning, Your Honors. Joseph O'Connell on behalf of the Respondent, Attorney General Eric Holder. Your Honors, this is a case in which the agency properly concluded that Mr. Cerone's conviction for assault with a deadly weapon in furtherance of the street gang's criminal activity constituted a crime involving moral turpitude. Now, I think the word moral turpitude is hard to define, but it is essentially anything that is inherently base, vile, or depraved, and contrary to the private and social duties individuals owe each other and to society in general. Are we looking at our federal cases, our decisions, or are we looking at the BIA's decision? Which ones are binding on us here? Well, as Your Honor pointed out in Kitchener's opening statement, moral turpitude is ambiguous. It's anything if ambiguous. But so the board's interpretation is necessarily controlling unless it's contrary or unless it's not a permissible reading of the term. And so as long as it's a permissible reading of the term, then you have to defer to the board's definition. So which case are we looking at? Because the decision below is non-precedential, so maybe it gets more deference, but we're not bound by it. Which BIA decision should we look at? There was a very old case that the board cited. It was a matter of R.G. It's in the board's decision. I don't have the specific site in front of me, but in that case, the board held as a precedential decision that assault with a deadly weapon was, in fact, categorically a crime involving moral turpitude. But why do we have to pick between us and the BIA? It seems to me that we also have a very old but still probably binding precedent to the same effect. Oh, yes. The holdings are in line. They're consistent. So whatever holding that Your Honor has decided to rely on, whether it's the Ninth Circuit or the board, I believe in the earlier 1950, the Gonzales v. Barber case, I believe they cited the matter of R.G. It's G.R., I thought. G.R., yes. I'm confused. Are you talking about the same thing, matter of G.R.? Yes. Yes, Your Honor. 1946. Yes, Your Honor. Okay. Yeah. And again, Gonzales v. Barber in 1953, they held that the assault with a deadly weapon was categorically a crime involving moral turpitude. But since then, haven't there been decisions of our court that seem to play the other direction? That's correct, Your Honor. In Carr v. INS, which the board cited in this decision and distinguished, the court stated and dicta that assault with a deadly weapon, a firearm, is not a crime involving moral turpitude. In doing so, they relied on the court's earlier decision in Comarenco v. INS. And in Comarenco, the issue was whether or not firearm convictions as a whole necessarily always constitute crimes involving moral turpitude. Now, the court used, in Comarenco, the court used the example that a firearm conviction or just the possession of a firearm is always not necessarily a crime involving moral turpitude. So they didn't essentially hold outright that all firearm convictions are not CIMTs. And the court in Carr misconstrued the court's holding in Comarenco, and they stated and dicta that firearm convictions are not CIMTs. Now, that is contrary to what the court held earlier, a 60-year precedent in Carr v. INS, where the court held specifically, and not with a firearm conviction, which is not the same statute here, the court held in Carr that assault with a deadly weapon is categorically a crime involving moral turpitude. Please turn that off. Go ahead. Yes, Your Honor. If the court has any questions specifically for me on the categorical approach or the mattified categorical approach, I'd be happy to address them. But again, just to refute a couple of the arguments the petitioner made, he's saying that the mens rea here is not necessary to satisfy the requirement for a crime involving moral turpitude, but it is. In this case, assault with a deadly weapon has an intent element to it. I have one question. Are you arguing that it's categorically a crime of moral turpitude as decided by the BIA, or are you saying they used a modified categorical approach? I'm arguing it's categorical. But if the court decides to get to the modified categorical approach, I believe it can do so. Well, I'm more inclined to that view than your first one. To the modified categorical or the categorical? Modified. Okay. Well, if the court decides to get to the modified categorical approach, there's several aggravating factors. I know what they are. What's that, sir? I know what they are. Okay. I did want to ask this question. Is the offense he was convicted of a wobbler offense? It is, in fact, a wobbler offense, but the wobbler offense does not matter because whether or not the sentence, in fact, the actual sentence does not matter. It's whether or not he could have been sentenced to more than a year in prison. The actual sentence is irrelevant. It's whether or not the state judge could have sentenced him to that. But it's a wobbler. Right. And if he were sentenced to less than six months, it would be a misdemeanor, wouldn't it? It would be deemed a misdemeanor, but the issue is whether or not the state judge could have decided that way. If he could have decided that it was, in fact, a felony and sentenced him to more than six months, which, in fact, he did, then that's enough to satisfy the CIMTC. Well, would you say that if the sentence was under six months that the defendant would have a good case? I would disagree with that entirely. I would say it's just the potential to be sentenced to the felony in this case. Well, that's not the way I interpret those cases. Correct. Assuming that this is a wobbler and the actual sentence determines whether it's a misdemeanor or is categorized as a felony, the question I have is the sentence was, of course, 364 days, less than a year, and a felony requires a year or more. On the other hand, a misdemeanor limits it to six months. But does it make any difference? This 364-day sentence amounted to no imposition of anything further than the jail time he put in awaiting trial. Correct, Your Honor. It's sort of in the gray zone between the misdemeanor and felony. But, again, in this case, he already admitted to committing a serious felony with the aggravating factors in this case. Under California Penal Code 1192, he admitted to committing a serious felony as a felony offense, which also constitutes a crime involving the furtherance of a criminal street gang. He essentially admitted to committing a felony. Let me ask you about the sentence, because the sentencing document was a little ambiguous. It said the imposition of sentence is suspended. The court has released you on formal probation for 36 months. And then on the other side of the sheet, it says sentence you to 364 days, and that's already been served. So how do we reconcile those two statements? It was ambiguous. But, again, I would go back to the argument that it does not matter. The actual sentence does not matter. But, again, it was already sentenced to something that was over six months. He served over six months. But because it was suspended and he was put on probation, the state court could have later modified the sentence to add years to the sentence or to modify it in any way he chose to fit. Unless there's any other questions, Your Honor, I rest on the argument in our response brief. Let me ask one more question about the sentencing document. I'm looking at page 205 of the minute order, which is at page 258. Item number 13 contains the following. If you are on felony formal probation, then the following applies. And then there's a quotation. How do we know why does it say if, and is there anything else in this document that indicates whether it's a felony probation as distinct from some other? There's nothing. There's nothing. So we don't know whether that. Aside from the fact that he actually admitted to committing a serious felony, which is part of the California Penal Code. So he admitted to committing a serious felony under the California Penal Code. Okay. Okay. Thank you. Thank you. You may have one minute for rebuttal. Thank you, Your Honors. I want to just very briefly go back to the Gonzalez case. Your Honor, the problem with relying on Gonzalez is that it's defective for probably the same reasons that Carr would be defective. That's where the court is inclined to go. In Gonzalez v. Barber, like in matter of GR, the standard for determining if something was a crime involving moral turpitude was whether or not you could show that the alien had a criminal heart and a criminal tendency. That standard was completely changed, or better yet, clarified in this court's en banc decision in Navarro-Lopez, which was decided in 2007 before the board made its decision in this case. So the board was aware of what the standard for meeting the definition of a crime involving moral turpitude was. In this case, if you're going to find that Carr v. INS does not apply, then equally Gonzalez would not apply, matter of GR doesn't apply. Aside from that, those cases predate the creation of a categorical approach. So at that time, there was no such thing as a modified approach. And very quickly, again, I would emphasize, matter of short, the BIA's decision, if you're going to give deference, give deference to that case that says you can't group more than one crime together to create a crime involving moral turpitude. U.S. v. Coronel Sanchez says you cannot rely on a sentence enhancement statute because it's not a statute of conviction. The only statute of conviction here is the assault with a deadly weapon, and those elements of the statute are the only thing that you look at. Hernandez-Cruz says you look at the conviction, not the conduct. Although I don't condone his conduct, that it was for a gang purpose, that it was a serious felony, that's conduct, not conviction. Thank you for your time, Your Honor. Thank you. Thank you very much. The case just argued is submitted. We appreciate the helpful arguments by both counsel.
judges: Bright, Graber, Ikuta